No. 25-297

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

YINTAO YU,

*Plaintiff-Appellant*,

v.

BYTEDANCE INC., ET AL.,

*Defendants-Appellees*.

On Appeal from United States District Court
for the Northern District of California,
No. 3:23-cv-04910-SI
Hon. Susan Illston

## PLAINTIFF-APPELLANT'S REPLY BRIEF

BRYAN CAFORIO (CA 261265)
bcaforio@susmangodfrey.com
JESSE-JUSTIN CUEVAS (CA 307611)
jcuevas@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

TANNER LAICHE (CA 344342)
tlaiche@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

*Counsel for Plaintiff-Appellant Yintao Yu*

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   ARGUMENT .......................................................................................1

    A.    Appellees Fail to Carry Their Burden to Establish Convention Jurisdiction ..................................................................................1

        1.    The ECIAA's Arbitration Clause Cannot Affect This Case ...................2

        2.    The ECIAA Falls Outside the Convention Because It Is Neither Commercial nor Connected to a Qualifying International Relationship ..................................................................................9

            a.    Appellees Fail to Establish Any Commercial Character ..............9

            b.    Appellees Cannot Manufacture an International Dispute From a Domestic Confidentiality Agreement Between a U.S. Entity and LPR ...........................................................16

            c.    Boilerplate Contract Terms and Alleged One-Off Overseas Signing Do Not Confer Federal Jurisdiction ..............21

    B.    Appellees Disregard Key Facts to Argue the Order Was Immediately Appealable Under 9 U.S.C. § 16(b) ........................................................24

III.  CONCLUSION...................................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Info. Mgmt. of Hawaii, LLC v. Shred-It Am., Inc.*,
2010 WL 4642045 (D. Haw. Nov. 2, 2010)..........................................................22

*Acosta v. Master Maint. & Constr. Inc.*,
452 F.3d 373 (5th Cir. 2006)...............................................................3, 4, 5, 6

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) ....................................................................................13

*AT&T Techs., Inc. v. Commc'ns Workers*,
475 U.S. 643 (1986) ......................................................................................7

*Beiser v. Weyler*,
284 F.3d 665 (5th Cir. 2002)...............................................................3, 4, 6, 7

*Bushley v. Credit Suisse*,
360 F.3d 1149 (9th Cir. 2004)........................................................................25

*Cerner Middle E. Ltd. v. Belbadi Enters. LLC*,
939 F.3d 1009 (9th Cir. 2019)...................................................................3, 4, 7

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*,
923 F.2d 245 (2d Cir. 1991)...........................................................................18

*Dees v. Billy*,
394 F.3d 1290 (9th Cir. 2005)........................................................................25

*Diaz v. Macy's Stores, Inc.*,
101 F.4th 697 (9th Cir. 2024)........................................................................25

*Duncan v. Stuetzle*,
76 F.3d 1480 (9th Cir. 1996)...........................................................................2

*Freudensprung v. Offshore Tech. Servs., Inc.*,
379 F.3d 327 (5th Cir. 2004)........................................................................20

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992)........................................................................13

*Gonzales v. Raich*,
    545 U.S. 1 (2005) ..................................................................... 12

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000) ............................................................ 24, 25, 26

*Hawkins v. KPMG LLP*,
    423 F. Supp. 2d 1038 (N.D. Cal. 2006) ............................................ 9

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) .................................................................. 11

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ................................................................. 3, 4

*Indus. Tectonics, Inc. v. Aero Alloy*,
    912 F.2d 1090 (9th Cir. 1990) .................................................... 16

*Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*,
    631 F.3d 1133 (9th Cir. 2011) ............................................ *passim*

*International Alliance of Theatrical Stage Employees & Moving*
    *Picture Technicians, Artists, & Allied Crafts of the United States v.*
    *InSync Show Productions, Inc.*,
    801 F.3d 1033 (9th Cir. 2015) ............................................ 24, 25, 26

*Jones v. Sea Tow Services Freeport NY Inc.*,
    30 F.3d 360 (2d Cir. 1994) ....................................................... 23

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) .................................................... 11

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*,
    938 F.3d 874 (7th Cir. 2019) ..................................................... 22

*MediVas, LLC v. Marubeni Corp.*,
    741 F.3d 4 (9th Cir. 2014) ........................................................ 25

*N. Motors, Inc. v. Knudsen*,
    2011 WL 2552573 (E.D. Mo. June 27, 2011) ............................... 16

*Navajo Nation v. Dep't of the Interior*,
    876 F.3d 1144 (9th Cir. 2017) .................................................... 12

iii

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ...................................................................26

*Outokumpu Stainless USA, LLC v. Converteam SAS*,
902 F.3d 1316 (11th Cir. 2018).................................................23

*Padilla Ayala v. Teledyne Def. Elecs.*,
533 F. Supp. 3d 920 (C.D. Cal. 2021).............................19, 20, 22

*Pineda v. Sun Valley Packing*,
2021 WL 5755586 (E.D. Cal. 2021) ...........................................20

*RA Inv. I, LLC. v. Smith & Frank Grp. Servs.*,
2005 WL 3299710 (E.D. Tex. Dec. 5, 2005).................................16

*Reid v. Doe Run Res. Corp.*,
701 F.3d 840 (8th Cir. 2012).......................................................4

*Reno v. Condon*,
528 U.S. 141 (2000) ...................................................................14

*Rogers v. Royal Caribbean Cruise Line*,
547 F.3d 1148 (9th Cir. 2008).....................................................18

*SanDisk Corp. v. SK Hynix Inc.*,
84 F. Supp. 3d 1021 (N.D. Cal. 2015) ............................................9

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974) ..............................................................18, 20

*Sebelius v. Auburn Reg'l Med. Ctr.*,
568 U.S. 145 (2013) ...................................................................17

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ...................................................................25

*Soaring Wind Energy, L.L.C. v. Catic USA Inc.*,
946 F.3d 742 (5th Cir. 2020).......................................................23

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) .......................................................................10

iv

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*,
    873 F.2d 1221 (9th Cir. 1989)...............................................................2

*United States v. Chavarria*,
    140 F.4th 1257 (10th Cir. 2025)...............................................14, 15

*United States v. Lopez*,
    514 U.S. 549 (1995) .................................................................14, 15

*United States v. Novak*,
    476 F.3d 1041 (9th Cir. 2007)..............................................................17

*Wilson v. Lignotock U.S.A., Inc.*,
    709 F. Supp. 797 (E.D. Mich. 1989) ..................................................23

*Yang v. Majestic Blue Fisheries, LLC*,
    876 F.3d 996 (9th Cir. 2017).................................................................6

*Zeng v. Ellenoff Grossman & Schole LLP*,
    2024 WL 4451605 (S.D.N.Y. Apr. 10, 2024)....................................16

**Statutes**

9 U.S.C. § 3 .........................................................................24, 25, 26

9 U.S.C. § 4 ....................................................................3, 8, 24, 25

9 U.S.C. § 16(b) .......................................................................24, 26

9 U.S.C. § 202 ...........................................................................*passim*

9 U.S.C. § 205 ...........................................................................*passim*

18 U.S.C. § 922(g)(5).......................................................................17

18 U.S.C. § 1836(b)(1)......................................................................15

20 U.S.C. § 1091 ..............................................................................17

26 U.S.C. § 1 ...................................................................................17

26 U.S.C. § 7701(b) ..........................................................................17

28 U.S.C. § 1332 ........................................................................16, 17

50 U.S.C. § 3802 ...................................................................................17

vi

## I. INTRODUCTION

This appeal turns on whether a federal court may seize a simple state-law contract formation dispute and convert it into an international affair under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Although Appellees' Answering Brief ("AB") spins pages of theories trying to stretch the Convention past its text and purpose, nothing they say changes two basic facts: Mr. Yu brought a purely domestic California-law action about whether he signed the ECIAA; and the ECIAA was a domestic confidentiality agreement for California employees and not the kind of cross-border arrangement the Convention was designed to reach.

The governing standards are simple. Removal jurisdiction under 9 U.S.C. § 205 only applies to arbitration clauses capable of shaping the case. And § 202 requires a bona fide commercial relationship with a real international nexus. Appellees establish neither. Under the statute, case law, and record, the district court lacked jurisdiction. The order must be vacated and the case remanded.

## II. ARGUMENT

### A. Appellees Fail to Carry Their Burden to Establish Convention Jurisdiction

The ECIAA is a domestic agreement with an arbitration clause that could not influence the outcome of this contract-formation dispute. "[F]ederal jurisdiction 'must be rejected if there is any doubt as to the right of removal in the first instance.'"

1

*Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citation omitted). Indeed, a "federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Here, without an arbitration clause meeting § 205's "relates to" standard—or a qualifying international commercial relationship under § 202—federal jurisdiction cannot exist.

### 1. The ECIAA's Arbitration Clause Cannot Affect This Case

Appellees never rebut the basic premise that § 205 removal is allowed only when an arbitration clause or award could potentially influence the dispute. Appellees instead try to convert § 205 into a one-way ratchet, claiming that if the complaint mentions an agreement that happens to contain an arbitration provision, removal is automatic because the suit "has a connection, relation, or reference" to that agreement. *See* AB at 16 (quoting *Acosta v. Master Maintenance & Construction Inc.*, 452 F.3d 373, 378 (5th Cir. 2006)). That argument fails for several reasons.

***First***, Appellees' position is contrary to Ninth Circuit law. In this Circuit, a case "relates to" an arbitration agreement under § 205 only if the arbitration agreement "could conceivably affect the outcome of the plaintiff's case." *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011) (citation omitted). This means the defendant must establish that an arbitration agreement (or

2

arbitration-produced ruling) contains specific legal conclusions or operative determinations "that will plausibly impact the ultimate adjudication of the claims[.]" *Cerner Middle E. Ltd. v. Belbadi Enters. LLC*, 939 F.3d 1009, 1016 (9th Cir. 2019).

Appellees do not clear that bar. The only question in this declaratory-judgment action is whether Mr. Yu signed the ECIAA. That question is logically separate and legally antecedent to any issue of arbitration. And under both the ECIAA's own language and binding law, contract-formation disputes cannot be delegated to an arbitrator. *See* 3-ER-538 (arbitration clause applies only to disputes "arising out of or relating to or resulting from … [Mr. Yu's] employment"); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (formation is a "gateway" issue for courts alone). The ECIAA's arbitration clause thus provides no operative rights, duties, or defenses capable of shaping the outcome of the removed declaratory-judgment suit, which asks only whether the ECIAA was executed in the first instance. 9 U.S.C. § 4; *Howsam*, 537 U.S. at 84.

**Second**, Appellees' out-of-circuit cases—*Beiser v. Weyler* and *Acosta v. Master Maint. & Constr. Inc.*—are neither binding nor pertinent. If anything, they reinforce why removal fails.

*Beiser* recited a "conceivably having an effect" standard that turns on whether the arbitration clause could have a "possible effect on the outcome of an issue or decision." 284 F.3d 665, 669 (5th Cir. 2002). That is exactly what *Infuturia* requires

3

and what Appellees cannot establish. That standard was also satisfied in *Beiser* because—even though the plaintiff might not have been individually bound under "exceptions and limitations" to corporate personhood—the defendants could *plausibly wield the arbitration clause as a defense* to defeat the plaintiffs' tort claims by compelling arbitration at the outset. 284 F.3d at 667–70. Appellees can do no such thing here. *See* 3-ER-538; 9 U.S.C. § 4; *Howsam*, 537 U.S. at 84.

Similarly, Appellees wrongly invoke *Acosta*. *Acosta* stretched *Beiser* by suggesting that "relates to" is satisfied whenever the dispute merely "has some connection, has some relation, [or] has some reference" to an arbitration agreement or award. 452 F.3d at 377. Appellees embrace this language to convert § 205 into a magic switch that is activated whenever a complaint happens to mention or touch an agreement containing an arbitration clause. *See* AB at 16.

But this Court has squarely rejected that sweeping approach. It has cautioned the mere "possibility that some discussion in the [arbitration agreement] might conceivably be perceived as persuasive … cannot be enough by itself, unless there is something unique about the [arbitration agreement] being the source of the analysis." *Cerner*, 939 F.3d at 1016. The Ninth Circuit has never adopted *Acosta's* rule. Indeed, it appears that no Ninth Circuit decision has even cited *Acosta*. And while other Circuits have acknowledged *Acosta*, none has embraced its expansive test. *See Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 844 (8th Cir. 2012) (citing

4

*Acosta* but still "hold[ing] that a case may be removed under § 205 if the arbitration could ***conceivably affect*** the outcome of the case").[1]

*Acosta* is also distinguishable on its facts. In *Acosta*, insureds sued the tortfeasors' insurers seeking coverage under policies with an arbitration clause. 452 F.3d at 377. Even though the arbitration provisions were ultimately unenforceable under Louisiana law, *Acosta* held insureds' claims "related to" the provisions because the provisions set the forum for resolving the at-issue coverage disputes. *Id.* at 379 ("Stated as a rule, a clause determining the forum for resolution of specific types of disputes relates to a lawsuit that seeks the resolution of such disputes."). Here, by contrast, the ECIAA sets no forum for Mr. Yu's declaratory-judgment claim, nor could it as a matter of law. 3-ER-538; *Howsam*, 537 U.S. at 84. And, unlike in *Acosta*, Mr. Yu is not arguing that an arbitration clause is *unenforceable*; he argues that the entire ECIAA does *not exist*.

***Third***, Appellees insist that, even under *Infuturia*, the ECIAA could "conceivably affect the outcome" because Mr. Yu's claim would fail if the Court found that he signed the ECIAA. AB at 20. That argument misfires twice. To start, it improperly collapses the § 205 inquiry by treating the entire seventeen-page ECIAA—and not the single paragraph arbitration clause within it—as the

---

[1] Emphasis is added throughout this brief unless otherwise indicated.

"arbitration agreement." *See* AB at 17 ("[I]t is self-evident that Yu's suit … relates to … the **ECIAA**."); *id.* at 20 ("The **ECIAA** clearly could 'affect the outcome' of Yu's case[.]").

While § 205 does not define "arbitration agreement," the Convention itself defines an "agreement in writing" to include either "an arbitral clause in a contract" or a standalone "arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." Convention art. II(2); *see also id.* art. I(1) ("Each Contracting State shall recognize an *agreement in writing* ....."). That distinction matters. When the contract addresses subjects other than arbitration—as the ECIAA does—the "arbitration agreement" is the *clause itself* and not the entire document.

This is consistent with the Ninth Circuit's interpretation. *See Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 999 (9th Cir. 2017) ("The Convention Treaty in turn defines an 'agreement in writing' to 'include an arbitral clause in a contract or an arbitration agreement, *signed by the parties* ....'") (citation omitted) (emphasis in original). Even the Fifth Circuit decisions Appellees rely on expressly distinguish the arbitration clause from the broader contract. *See Beiser*, 284 F.3d at 669 ("[T]he district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an ***arbitration clause*** falling under the Convention provides a defense."); *Acosta*, 452 F.3d at 378–79 (framing the question in terms of whether

6

the litigation "has some connection, has some relation, has some reference to the *arbitration clauses*[.]").

Here, the dispositive question is whether the *arbitration clause itself* has any meaningful connection to this dispute. It does not. The clause is a single paragraph limited to claims "arising out of or relating to or resulting from" employment. 3-ER-538. It says nothing about, and cannot reach, this threshold challenge to the execution of the ECIAA. *See Howsam*, 537 U.S. at 84; *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (citation omitted).

Appellees' argument further fails because it merely restates the merits question of whether Mr. Yu signed the ECIAA to begin with. *Beiser*, the very case Appellees champion, expressly rejects "frontloading a merits inquiry into the district court's examination of its jurisdiction." 284 F.3d at 670 (stating courts should not "conflate[] the jurisdictional and merits inquiries"). And even if Mr. Yu had signed the ECIAA (he did not), under § 205 it must be the arbitration mechanism, or some arbitration-produced decision, that carries potential case-altering effect. *Cf. Cerner*, 939 F.3d at 1016 (stating § 205 requires "something unique about the [arbitration] award being the source of the analysis"). By their own admission, Appellees cannot meet this standard. They concede that "[n]othing an arbitrator says will have any bearing on the district court's determination that Yu signed the ECIAA[.]" AB at 44.

7

***Fourth***, Appellees inaccurately recast the Opening Brief as imposing a requirement that § 205 applies only when the plaintiff's claims are themselves arbitrable. AB at 18. Mr. Yu's point is narrower: the Ninth Circuit holds § 205 requires a non-frivolous nexus between the dispute and the arbitration clause that could "conceivably affect the outcome of the plaintiff's case." *Infuturia*, 631 F.3d at 1138. In *Infuturia*, removal was proper—even though the removing party was not a signatory to the arbitration clauses—because the prior arbitral award provided a case-dispositive ***collateral-estoppel defense***. *Id.* By contrast, Appellees identify no link between Mr. Yu's no-contract-formation claim and the ECIAA's arbitration clause, and they assert no arbitration-based defense capable of shaping the outcome. With no clause-driven mechanism and no plausible outcome-altering defense, § 205 jurisdiction fails. *Id.*

***Finally***, Appellees claim it would be "nonsensical" if a defendant's claim to compel arbitration "relates to" the agreement, but a plaintiff's "mirror-image" declaration of no agreement does not. AB at 20–21. But that distinction makes a difference. In a § 4 petition to compel arbitration, the movant invokes the Convention and asks the court to enforce a specific arbitration clause that—if a valid agreement exists—would change the forum and fate of the case. *See* 9 U.S.C. § 4. In that posture, the petition necessarily puts the arbitration clause at the center of the dispute. A California declaratory-judgment action over *contract formation*, by

8

contrast, presents only one issue: whether a contract (with or without an arbitration provision) exists at all. That threshold question would not push the case to arbitration, even assuming the contract in fact contained an arbitration clause.

The two postures are therefore not "mirror images" at all. And the only truly "nonsensical" result would be to allow removal where the arbitration clause is incapable of playing any role in the dispute. *See Infuturia*, 631 F.3d at 1138 (§ 205 does not apply to assertions of jurisdiction that are "absurd or impossible") (citation omitted); *SanDisk Corp. v. SK Hynix Inc.*, 84 F. Supp. 3d 1021, 1030 (N.D. Cal. 2015) (§ 205 does not allow removal where the connection "is too remote") (citation omitted); *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1047 (N.D. Cal. 2006) (holding defendants must demonstrate "there is a reasonable possibility—something more than a 'frivolous' or 'fanciful' argument—that defendants will be able to assert the arbitration clause to compel arbitration of plaintiff's claims").

### 2. The ECIAA Falls Outside the Convention Because It Is Neither Commercial nor Connected to a Qualifying International Relationship

#### a. *Appellees Fail to Establish Any Commercial Character*

Appellees try to rebrand the parties' relationship under the ECIAA as a global "commercial" employment compact by pointing to non-specific facts like Mr. Yu's job context and the internet. *See* AB at 22–28. But the question under § 202 does not turn, as Appellees suggest, on the parties' "employment relationship." *Id.* The

9

question is whether the ECIAA evidences a commercial bargain with an interstate commerce connection. *See Southland Corp. v. Keating*, 465 U.S. 1, 10–11 (1984) ("[A]rbitration provisions governed by the [FAA]… must be part of a written … contract 'evidencing a transaction involving commerce[.]'"). The ECIAA does not.

The ECIAA is a housekeeping covenant expressly labeled "For California Employees" that organizes internal, intramural policies. 3-ER-529–44. It never mentions out-of-state employment, multistate duties, cross-border performance, or the interstate exchange of goods, services, or money. *Id.*

Appellees assert the ECIAA is commercial because the "arbitration agreement is contained within an employment contract." AB at 23. Not true. Mr. Yu's employment agreement was his signed Offer Letter, which granted and governed his at-will employment and set the core economic terms of the job. *See* 3-ER-523–26. For example, the signed Offer Letter addresses Mr. Yu's salary, benefits, vacation time, bonus target, stock options, background check, confidentiality restrictions, property surrender, employment eligibility, and more. *Id*. To push their narrative, Appellees rely on the ECIAA's purported at-will clause, but that provision also appears in the Offer Letter and adds nothing new. *See* 3-ER-525. It is also notable that Appellees themselves assert that all California personnel—regardless of position, title, or duties—are required to sign the same ECIAA. *See* 3-ER-311.

10

Even if Appellees could somehow recast the ECIAA as an "employment contract" (they cannot), Appellees do not establish that Mr. Yu's employment "involved interstate commerce." AB at 23. That failure is fatal. As the removing parties, Appellees exclusively "bear[] the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) ("When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof.").

Appellees try to manufacture "commercial" employment by relying entirely on job titles, vague descriptions, and lawyer-drafted arguments—not evidence. Appellees' lead example is telling: They cite a sentence from Mr. Yu's state-court complaint stating he worked "as the head of engineering for the U.S. offices of ByteDance" on "all video apps at ByteDance, including TikTok, Douyin, and Flipagram." AB at 23 (citing 3-ER-483). But that statement is simply an allegation. Moreover, Appellees insist the statement is *false*, even as they cite it as proof of commercial activity. *See id.* at 23 n.4 ("BDI disputes that Yu was the head of engineering for its U.S. offices[.]").

Appellees next argue that because the Internet, telephones, and software *can* be instrumentalities of interstate commerce, and because Mr. Yu's job allegedly involved using those technologies, his employment necessarily "involved

11

commerce." AB at 23–24. That argument skips the only step that matters: Appellees identify no facts demonstrating that Mr. Yu actually used any instrumentality of interstate commerce to perform his work. *Id.* They cite no examples of interstate communications, no evidence of cross-border data transmissions, and no details about systems he purportedly interacted with. *Id.* Listing technologies that *could* facilitate interstate activity is not evidence that Mr. Yu's job did. *See Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (refusing to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations,' … especially[] where our jurisdiction is at stake") (citation omitted).

Appellees then pivot to TikTok's global footprint, as if citing statistics about billions of users somehow establishes that Mr. Yu's employment relationship was commercial under the Convention. AB at 23. The question here is not whether TikTok affects interstate commerce—it plainly does—but how *Mr. Yu*'s day-to-day work supposedly "substantially affected" commerce. Headlines about TikTok are not facts about Mr. Yu, and *Gonzales v. Raich*, 545 U.S. 1 (2005), does not stand for the proposition that any job related to a widely used product automatically confers federal jurisdiction.

Appellees also lean on equivocal statements by Mr. Yu's former counsel, AB at 25–26, but those musings are not evidence and do not establish that Mr. Yu's employment "involved commerce." Counsel simply was observing that he "couldn't

say … that this contract was entirely domestic in scope." 2-ER-19–21. That hedged non-opinion by prior counsel cannot substitute for proof. Nor do Appellees fill the void with the cited stray facts. A single trip to China to allegedly sign the ECIAA says nothing about whether Mr. Yu's actual employment affected commerce, and a boilerplate publicity clause in a stock agreement is not proof that the employment relationship itself fell under Congress's commerce power.

Appellees identify no other facts demonstrating how Mr. Yu's alleged role translated into the kind of commercial activity the Convention requires. Without evidence proving what Mr. Yu actually did, how he did it, or how his work connected to any commercial enterprise, Appellees fail to establish that the ECIAA (even if an "employment agreement") was a commercial agreement under the Convention. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.").

Appellees' reliance on *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995), misses the point. *Allied-Bruce* simply provides that the FAA applies where the contract actually involves interstate "commerce ***in fact***" even when the parties did not contemplate an interstate connection at the outset. *Id.* at 281. There, the parties did not dispute a commerce in fact relationship where a termite-control agreement relied on materials shipped across state lines as part of a genuine

13

commercial transaction. 513 U.S. at 282. Here, Appellees' do not establish that a "commerce in fact" relationship exists. And the fact that BDI is a multinational company alone is insufficient; otherwise, every agreement with every company with a global footprint would constitute a Convention contract.

Finally, Appellees try to paint the ECIAA as a commercial agreement because it "regulates the ownership and disclosure of confidential and proprietary information." AB at 26–27. But that flips § 202 on its head. It is not enough that some subject matter mentioned in the agreement could, in the abstract, travel in interstate commerce. *See United States v. Chavarria*, 140 F.4th 1257, 1268 (10th Cir. 2025) (holding that "'motor vehicles'—an undefined, generic term—are not per se instrumentalities of interstate commerce"); *cf. United States v. Lopez*, 514 U.S. 549, 564, 567 (1995) (stating Congress's Commerce Clause Power cannot rely on "tenuous[]" connections or "inference upon inference"). The statute demands a commercial relationship, and not some free-floating subject matter with hypothetical commercial capacity.

Appellees' reliance on *Reno v. Condon*, 528 U.S. 141 (2000), to support this argument falls short. AB at 27. *Condon* upheld the Driver's Privacy Protection Act as a valid exercise of Congress's Commerce Clause power because states were selling drivers' personal data as an "article of commerce" into interstate markets. *Id.* at 148. *Condon's* finding of Congressional power turned on the regulated entity

14

being a commercial actor and engaging in the sale of information as an "article of commerce" into the interstate stream of business. *Id.* at 148–49. Here, by contrast, the ECIAA is a California-centric, ancillary employment covenant governing internal confidentiality and inventions assignment for a California employee. 3-ER-528. It contains no terms for the sale, dissemination, or exchange of information in any marketplace—interstate or otherwise. *Id. Condon* therefore underscores the flaw in Appellees' argument rather than supporting it.

Nor does the Defend Trade Secrets Act ("DTSA") change the result. That Congress may provide a tort remedy for misappropriation of trade secrets "related to a product or service used in, or intended for use in, interstate or foreign commerce," 18 U.S.C. § 1836(b)(1), says nothing about whether a private agreement "evidenc[es] a transaction involving commerce" or is "commercial." 9 U.S.C. § 202. Appellees never identify a single "trade secret" purportedly covered by the ECIAA and DTSA. And for good reason. The ECIAA is a negative, intramural covenant that restricts a California employee's internal use of information while working in California. 3-ER-528. An agreement does not become "commercial" merely because it references "information" or "data." *Id.* Treating the ancillary covenants in the ECIAA as a "commercial transaction" simply because unspecified information can hypothetically be valuable in interstate markets would collapse § 202's threshold

15

and risk commercializing every NDA in every contract. *Lopez*, 514 U.S. at 564; *Chavarria*, 140 F.4th at 1268.

> **b.** **Appellees Cannot Manufacture an International Dispute From a Domestic Confidentiality Agreement Between a U.S. Entity and LPR**

Appellees fail to meet their burden of proving that the ECIAA has a sufficient international element to confer federal jurisdiction. *First*, BDI's "foreign affiliates" theory is unsupported and self-serving. Appellees do not identify a single affiliate—let alone a foreign affiliate—that signed the ECIAA, undertook performance, or could compel or be compelled to arbitration under it. *See* AB at 29–34. Without any evidentiary support, Appellees cannot meet their burden under § 202. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) ("The party asserting jurisdiction has the burden of proving all jurisdictional facts.").[2]

*Second*, Mr. Yu's decade-long status as an LPR continuously domiciled in the United States—and now a naturalized citizen—does not make him the kind of "foreign" party the Convention was designed to reach. That is why other federal

---

[2] Appellees are also currently trying to dismiss Mr. Yu's AAA arbitration demand by claiming that BDI's affiliates cannot be compelled to arbitrate because they are *not signatories* to the ECIAA. Their position here is the opposite. That two-sided posture underscores exactly how flimsy their jurisdictional theory is. *Cf. RA Inv. I, LLC. v. Smith & Frank Grp. Servs.*, 2005 WL 3299710, at *4 (E.D. Tex. Dec. 5, 2005) ("[T]he Court finds the agreements to be entirely between United States citizens in spite of Defendant' argument that the [Defendant's] parent … is a German citizen.).

courts have looked to the now-repealed deeming clause in 28 U.S.C. § 1332 to conclude LPRs domiciled in the U.S. qualify as "citizens" for purposes of the Convention. *See, e.g., N. Motors, Inc. v. Knudsen*, 2011 WL 2552573, at *3 (E.D. Mo. June 27, 2011); *Zeng v. Ellenoff Grossman & Schole LLP*, 2024 WL 4451605, at *5 (S.D.N.Y. Apr. 10, 2024).

Appellees are wrong to insist that the deeming clause's limitation to § 1332, § 1335, and § 1441 ends the inquiry. AB at 31–32. Congress has treated issues of citizenship the same way in both 9 U.S.C. § 202 and 28 U.S.C. § 1332, for example, by keying corporate citizenship to where the company is headquartered or maintains a principal place of business. *See* 9 U.S.C. § 202; 28 U.S.C. § 1332. That consistent definition for corporate "citizenship" cuts across both statutes. It is therefore not unreasonable for courts to also interpret *individual* citizenship similarly across both statutes. *See United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) ("[C]ourts generally interpret similar language in different statutes in a like manner when the two statutes address a similar subject matter.").

To be clear, Mr. Yu is not arguing that the deeming clause mechanically controls § 202. The point is that the deeming clause reflects a longstanding understanding that LPRs domiciled in the United States are not invariably treated as "aliens," including for jurisdictional purposes. *Cf.* 50 U.S.C. § 3802; 26 U.S.C. §§ 1, 7701(b); 20 U.S.C. § 1091; 18 U.S.C. § 922(g)(5). That matters here. Where

17

Congress has treated LPRs with permanent U.S. domicile as functional citizens for jurisdictional purposes, it makes little sense to deem them "foreign" in any legally meaningful way that would trigger the Convention's international neutrality concerns. *Cf. Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013) (stating courts should use "context," including "interpretations of similar provisions" to determine Congress's intent when interpreting statutes) (citation omitted).

Moreover, Appellees ignore the core point that, even if a party is not a "citizen" as used in § 202, the Convention nevertheless still extends only to otherwise international agreements. 9 U.S.C. § 202. As the Supreme Court has made clear "[t]he goal … and the principal purpose [of the Convention] … was to encourage the recognition and enforcement of commercial arbitration agreements ***in international contracts***[.]" *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974); *cf. Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1158 (9th Cir. 2008) ("The Supreme Court has recognized 'the emphatic federal policy in favor of arbitral dispute resolution … in the field of ***international commerce***.'") (citation omitted); *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991) ("The goal of the Convention is to promote the enforcement of arbitral agreements in contracts ***involving international commerce*** so as to ***facilitate international business transactions*** on the whole.") (citation omitted). The Convention itself confirms as much, as Article I explicitly limits its reach to

18

*arbitral awards **made abroad** or treated as **non-domestic** by the enforcing state. See* Convention art. I.

Congressional hearings prior to the Convention's codification further confirm this understanding. Chairman of the Secretary of State's Advisory Committee on Private International Law, Richard D. Kearney, clarified that this new chapter enacting the Convention had a limited scope:

> [This proposed chapter] provides for the removal to the District Court from the State Court in a case that falls under the Convention, but what we are dealing with is ***foreign commerce*** which now is totally within the ambit of federal authority.

*Padilla Ayala v. Teledyne Def. Elecs.*, 533 F. Supp. 3d 920, 927 (C.D. Cal. 2021) (quoting S. Comm. on Foreign Relations, Foreign Arbitral Awards, S. Rep. No. 91–702 at 6, 44 (1970)). He further elaborated:

> The basic reason that we propose this and became part of the convention is because the people engaged in ***foreign trade*** consider arbitration is [sic] a very economical and speedy way of settling commercial disputes and they are the ones who wanted this.

*Id*. (quoting S. Rep. No. 91–702 at 45).

Nothing about the ECIAA fits that mold. Even though Mr. Yu was an LPR when Appellees contend he executed the ECIAA, the arbitration is seated in California and any award would be enforced in California. 3-ER-528. By any legal or practical measure, the award would be domestic. *See* Convention art. I. The agreement confirms as much. The ECIAA is labeled "For California Employees,"

19

governed by California law, entered by a California corporation and a longtime U.S. resident with no foreign domicile, no set foreign obligations, and no clear foreign performance. 3-ER-528.

Appellees attempt to manufacture "internationality" based solely on a person's passport—treating nationality alone as dispositive—even when every operative fact is entirely domestic. That is not what the Convention was meant to reach. Unsurprisingly, district courts in this Circuit have refused to stretch the Convention to domestic disputes even where the plaintiff happened to be a foreign citizen. *See, e.g.*, *Padilla Ayala v. Teledyne Def. Elecs.*, 533 F. Supp. 3d 920 (C.D. Cal. 2021); *Pineda v. Sun Valley Packing*, 2021 WL 5755586, at *2 (E.D. Cal. 2021).

Appellees contend these cases are non-binding and supposedly contrary to the "plain text" of § 202. AB at 33. But that framing distorts both the statute and the decisions. Section 202 does not say that any agreement with a foreign party automatically "falls under the Convention." It simply clarifies that when two U.S. citizens are in an arbitration dispute, the standard is higher for the Convention to apply. 9 U.S.C. § 202. It is a carveout. The Convention nevertheless still requires an international contract or non-domestic award. *See Scherk*, 417 U.S. at 520 n. 15; Convention art. I. Mixed citizenship alone does not accomplish that. *See Padilla Ayala*, 533 F. Supp. 3d at 927; *Pineda*, 2021 WL 5755586, at *2.

Appellees' lone non-binding, out-of-circuit case—*Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004)—does not say otherwise. *Freudensprung*, and the earlier Fifth Circuit case it relied upon, never addressed head-on whether foreign citizenship alone is sufficient to trigger Convention jurisdiction. *Id.* at 339–40. Nor did *Freudensprung* need to reach that issue because the dispute involved a contract between two U.S. citizens and also had a clear international nexus because the agreement called for offshore construction work, performed on a barge in West Africa, and was governed by foreign law. *Id.* at 330–33. None of those features are present here.

In short, the Convention does not spring into effect merely because one party carries a foreign passport. It applies only where the agreement itself bears a genuine foreign relation, which the ECIAA lacks.

### c. *Boilerplate Contract Terms and Alleged One-Off Overseas Signing Do Not Confer Federal Jurisdiction*

Without proving the ECIAA's commercial character or international nexus, Appellees' position collapses because they never establish that the parties' legal relationship has any meaningful foreign connection within the scope of § 202.

Appellees try to conjure an international dispute by pointing to generic, belt-and-suspenders IP language that mentions rights "anywhere in the world," and by claiming that Mr. Yu executed the ECIAA in China. AB at 34–40. Neither transforms this into a Convention case.

21

The ECIAA does not license, sell, pledge, or otherwise transact in foreign IP. *See* 3-ER-528–44. It's an HR document that does what countless domestic confidentiality agreements do in that it allocates ownership of employee-created materials to the employer and prohibits unauthorized disclosure under California law. *Id*. That those standard, internal obligations apply "worldwide" or exist "in any jurisdiction" merely preserves the employer's rights wherever they may arise. Appellees cannot elevate boilerplate and formalities over substance to establish jurisdiction. *See Soaring Wind Energy, L.L.C. v. Catic USA Inc*., 946 F.3d 742, 753 (5th Cir. 2020) (concluding that while the agreements "stated purpose was 'to provide worldwide marketing' in wind energy," the agreement "bear[ed] no relation to China (or any other foreign state).")"; *cf. Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 883–84 (7th Cir. 2019) (holding that a "worldwide coverage" provision merely defined the territorial scope of an obligation and does not create purposeful contacts with every covered jurisdiction).

Appellees' "reasonable relation" theory fares no better. Here, the ECIAA is expressly "For California Employees," governed by California law, and arbitrated in Los Angeles. 3-ER-528–44. Its day-to-day performance is entirely domestic because it covers a California employee honoring confidentiality and assignment obligations to a U.S. company in California and under California rules. *Id*. Numerous cases hold that having global affiliates, cross-border IT systems, and alleged

22

intermittent travel does not convert an agreement into an international commercial contract. *See Access Info. Mgmt. of Hawaii, LLC v. Shred-It Am., Inc.*, 2010 WL 4642045, at \*6 (D. Haw. Nov. 2, 2010) ("[I]t is irrelevant to the inquiry that SIA is a wholly-owned subsidiary of a Canadian corporation."); *Wilson v. Lignotock U.S.A., Inc.*, 709 F. Supp. 797, 799 (E.D. Mich. 1989) (holding employee's business trips to Europe did not establish an international nexus because "these trips were not required under plaintiff's employment contract").

Nor do Appellees' cases hold what they contend. For example, *Jones v. Sea Tow Services Freeport NY Inc.*, did not announce a "negotiated-or-executed-abroad" test, and instead actually held that an arbitration provision did **not** fall under the Convention despite calling for arbitration in England under English law. 30 F.3d 360, 366 (2d Cir. 1994). *Outokumpu Stainless USA, LLC v. Converteam SAS*, did not deal with an agreement allegedly signed abroad and, in any event, is factually distinguishable because it involved a multinational supply chain and "performance by … foreign subcontractors in foreign states." 902 F.3d 1316, 1324 (11th Cir. 2018). And, finally, *Soaring Wind Energy* dealt with a *specifically identified* foreign affiliate whose "actions on foreign soil could (and did) trigger breach" and could be held "jointly and severally liable." 946 F.3d at 753.

Here, any international connection is at most incidental. Mr. Yu has consistently denied ever negotiating or signing the ECIAA in China (or anywhere

23

else). Appellees never identify which "foreign affiliates" supposedly transform this California HR form into an international contract, nor do they claim any such foreign entity actually signed the ECIAA, breached it, or could be held individually liable under it. And they cite no other evidence supporting their effort to rebrand a purely domestic California employment-related agreement into an agreement affecting international commerce. AB at 34–40. The Convention thus does not apply.

**B. Appellees Disregard Key Facts to Argue the Order Was Immediately Appealable Under 9 U.S.C. § 16(b)**

While Mr. Yu's appeal does not turn on whether the District Court's order is immediately appealable under 9 U.S.C. § 16(b), Appellees' reframing of this case as a "second category" *Green Tree* scenario glosses over several key facts. AB at 34.

***First***, Appellees never confront that *International Alliance of Theatrical Stage Employees & Moving Picture Technicians, Artists, & Allied Crafts of the United States v. InSync Show Productions, Inc.*, 801 F.3d 1033 (9th Cir. 2015), involved a narrow exception arising in a completely different procedural posture. *InSync* began as a standalone § 4 petition to compel arbitration. *Id.* at 1036. In that setting, once the court grants the petition, there truly is "nothing more for the court to do but execute the judgment," because the only relief ever sought was an order sending the parties to arbitration. AB at 43 (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 86 (2000)). But the district court here did not confront a bare

24

§ 4 petition; it faced a removed declaratory-judgment action, counterclaims, and a litigated sanctions posture.

Appellees also overlook that *Green Tree* and *InSync* recognize the practical reality that when a case involves anything more than a bare § 4 petition, real-world contingencies can pull the parties back into court, whether for non-arbitrability rulings, collateral relief, or address other downstream disputes. And Appellees themselves admit they plan to do exactly that. *See* AB 44–45 n.15 (stating that BDI intends to file additional motions with the district court). The Ninth Circuit has long recognized that—outside the narrow *InSync* carveout for pure § 4 petitions—a stay keeps the order nonfinal. *See Diaz v. Macy's Stores, Inc.*, 101 F.4th 697, 701 (9th Cir. 2024); *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 6–9 (9th Cir. 2014); *Bushley v. Credit Suisse*, 360 F.3d 1149, 1153 n.1 (9th Cir. 2004); *Dees v. Billy*, 394 F.3d 1290 (9th Cir. 2005).

***Second***, Appellees ignore the fact that *they* invoked 9 U.S.C. § 3 and asked the district court to stay this case. 3-ER-457. By seeking a § 3 stay, Appellees necessarily represented it was their belief that this action contained claims requiring the court's continued jurisdiction, which directly contradicts their new argument that the court had "nothing more to do" and that the order was automatically final. *See id.*; *cf. Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("[W]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending

25

arbitration, § 3 of the FAA compels the court to stay the proceeding."). That is the kind of position-shifting judicial estoppel forbids. *See New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001). Appellees took one position to secure a stay (that the case required ongoing district-court supervision) and now advance the opposite position (that the court's work was over) to manufacture appellate jurisdiction that § 16(b) withholds.

*Finally*, Appellees ignore the procedural reality that the district court never treated this case as an entirely separate, stand-alone action. From the outset, and at BDI's request, the court designated this suit as related to Mr. Yu's two other employment cases (bringing substantive claims) and assigned all three to the same judge. *See* 3-ER-460 ("I find that the more recently filed case(s) that I have initialed below are related to the case assigned to me, and such case(s) shall be reassigned to me."). Because those related cases could return to federal court and, under the related-case order be routed back to the same judge, this case is distinguishable from *InSync*. *See also Green Tree*, 531 U.S. at 87 n.2 ("Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable.") (citing § 16(b)(1)).

26

## III.    CONCLUSION

The record confirms the ECIAA is not governed by the Convention, leaving the district court without subject-matter jurisdiction. This Court should vacate and remand to state court.

Dated:   December 15, 2025

Respectfully submitted,

SUSMAN GODFREY L.L.P.

*/s/ Tanner H. Laiche*
Bryan Caforio
Jesse-Justin Cuevas
Tanner H. Laiche

*Attorneys for Appellant Yintao Yu*

27

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** No. 25-297

I am the attorney or self-represented party.

**This brief contains** 6,320 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Tanner H. Laiche **Date** December 15, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*